325 F.3d 1274
 IRAOLA & CIA, S.A., Plaintiff-Counter-Defendant-Appellant,
v.
KIMBERLY-CLARK CORPORATION, Defendant-Counter-Claimant-Appellee,
Geo Med, N.A., J.N. Anderson, George Semones, Defendants-Appellees.
 No. 01-16203.
 United States Court of Appeals, Eleventh Circuit.
 March 31, 2003.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Edward Griffith, Bolatti & Griffith, New York City, Kevin P. Race, Atlanta, GA, for Iraola & CIA, S.A.
 J. Randal Wexler, Thomas K. Cauley, Jr., Sidley & Austin, Chicago, IL, Stephen P. Fuller, Davidson, Fuller & Sloan, L.L.P., Duluth, GA, James A. Lamberth, Lynette Eaddy Smith, Troutman Sanders, LLP, Atlanta, GA, for Kimberly-Clark Corp., Geo Med, N.A., J.N. Anderson and George Semones.
 
 
 1
 Appeal from the United States District Court for the Northern District of Georgia.
 
 
 2
 Before ANDERSON and CARNES, Circuit Judges, and POLLAK,* District Judge.
 
 POLLAK, District Judge:
 
 3
 Appellant Iraola & CIA, S.A. ("Iraola") appeals several decisions of the United States District Court for the Northern District of Georgia in this diversity case: first, the decision of February 25, 1998 dismissing Iraola's claims against appellees Kimberly-Clark Corporation ("K-C"), Neal Anderson ("Anderson"), and George Semones ("Semones") for wrongful termination, promissory estoppel, and quantum meruit; second, the decision of July 10, 2001 granting summary judgment against Iraola as to its claims against appellees for breach of contract and tortious interference with contractual relations; and third, the decisions of June 4 and July 10, 2001 denying Iraola's motions to compel and to extend discovery and denying Iraola's Rule 56(f) application for a continuance. We affirm each of the District Court's rulings.
 
 I. Factual Background
 
 4
 At the time of the events giving rise to this litigation, 1) Iraola was an Argentine company specializing in distributing medical supplies to hospitals in Argentina; 2) defendant K-C, a company incorporated in Texas and Delaware, manufactured medical supplies; 3) defendant George Semones, a citizen of Georgia, was K-C's international expansion manager for the medical product lines division; and 4) defendant Neal Anderson, also a citizen of Georgia, served as the general manager of K-C's global business team.
 
 
 5
 In March 1994, Iraola and K-C entered into an oral agreement pursuant to which Iraola was to distribute K-C's medical products in Argentina. K-C began shipping its products to Iraola and Iraola commenced distribution in Argentina in June 1994. Robert Alpert, a citizen of Argentina employed by Iraola, was initially in charge of Iraola's marketing of the K-C line, but in early 1996 Alpert left Iraola to establish Ultraline, S.A. ("Ultraline"), and began handling K-C's account as an independent contractor for Iraola. Unbeknownst to Iraola, however, K-C also began distributing some of its products directly through Ultraline and another distributor, Geo Med, S.A. ("Geo Med"). In May 1996, Semones and Anderson terminated the distribution agreement with Iraola.
 
 II. Procedural History
 
 6
 Iraola filed this diversity suit against K-C, Anderson, Semones, and Geo Med (which Iraola believed to be a firm located in Georgia) in 1997. Iraola alleged that the distribution agreement between Iraola and K-C (the 1994 oral agreement referred to above) was an exclusive contract of indefinite duration which K-C had no right to terminate. Iraola further alleged that K-C, Anderson and Semones solicited Iraola employees to leave Iraola and establish Ultraline and Geo Med as competitor distributorships. On February 25, 1998, the District Court dismissed Iraola's claims for wrongful termination, promissory estoppel, and quantum meruit, but declined to dismiss Iraola's claims for breach of contract and tortious interference.
 
 
 7
 In the course of discovery on the breach of contract and tortious interference claims, Iraola learned that, although Geo Med invoices listed a Georgia address, Geo Med was owned by Alpert, and the fact that Alpert was a citizen of Argentina seemed to signify that Geo Med — which had been named as a defendant on the understanding that it was a Georgia entity, but which had not yet been served — was really an Argentine entity. Iraola brought this information to the attention of the District Court. In Iraola's view, while Iraola, a foreign corporation and the sole plaintiff, was entitled to invoke the District Court's diversity jurisdiction to sue American defendants, inclusion of a foreign defendant would undermine that jurisdiction. To remedy this perceived jurisdictional difficulty,[1] Iraola proposed to the defendants that they agree to a voluntary dismissal of Iraola's federal court suit, with a view to having Iraola reinstate the suit in a jurisdictionally more hospitable state court. When the defendants declined to agree to a voluntary dismissal, Iraola filed a motion pursuant to Federal Rule of Civil Procedure 41(a)(2) for leave to dismiss without prejudice. The defendants opposed the motion but also contended that, should the motion be granted, the District Court should condition dismissal upon an award of attorneys' fees for work done that would not bear upon the future course of litigation if conducted in state court. Also, K-C moved for default judgment on a counterclaim — to which Iraola had filed no answer — alleging that, subsequent to K-C's termination of Iraola's distributorship, Iraola had failed to pay K-C for K-C products retained in inventory by Iraola.
 
 
 8
 The District Court acted in two steps. First, the District Court granted K-C's motion for default judgment. Second, the District Court granted Iraola's motion for voluntary dismissal. The District Court did not act on the defendants' request that voluntary dismissal be contingent on an award of attorneys' fees.
 
 
 9
 Iraola appealed to this court, contending that the District Court lacked subject-matter jurisdiction on two grounds. One was the ground which Iraola had argued in the District Court: namely, that the inclusion as a defendant of Geo Med, apparently a foreign entity, undermined diversity jurisdiction.[2] The other ground urged by Iraola on appeal was that 28 U.S.C. § 1332(a)(2), establishing diversity jurisdiction in suits between "citizens of a state and citizens or subjects of a foreign state," required that all American litigants — i.e., all parties adverse to the "citizens or subjects of a foreign state" — be "citizens of" the same "state." That asserted requirement, Iraola contended, was not met in the case at bar, since the American defendants included citizens of Georgia (Anderson and Semones) and also Delaware and Texas (K-C).
 
 
 10
 This court's disposition of Iraola's first appeal is reported at Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854 (11th Cir.2000). Our opinion addressed Iraola's jurisdictional arguments in reverse order. First, we ruled that Section 1332(a)(2) did not mandate that all the American defendants be citizens of the same state. Id. at 857-60, 232 F.3d 854. Next, acknowledging "that federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides," and recognizing that "unincorporated entities are attributed to the citizenship of their owners ... [and therefore] Geo Med is an Argentinian entity because its owner, Alpert, is Argentinian," it followed that "if Geo Med, an Argentine entity, is considered in the diversity analysis, this court would not have jurisdiction." Id. at 860.[3] However, we went on to determine that Geo Med was a dispensable party that could properly be removed from the litigation in order to preserve federal jurisdiction.
 
 
 11
 In sum, we held that the District Court had subject-matter jurisdiction. We concluded our opinion by directing the District Court, on remand, to address defendants' request for an award of attorneys' fees as a condition of authorizing voluntary dismissal — a request that the District Court had not addressed in making the rulings appealed from. Approximately four months later this court also affirmed the District Court's denial of Iraola's Rule 60(b) motion for relief from K-C's counterclaim judgment. See Iraola & Cia, S.A. v. Kimberly-Clark Corp., 250 F.3d 750 (11th Cir.2001) (decision without published opinion).
 
 
 12
 On remand, the District Court ordered Iraola to pay attorneys' fees as a corollary of voluntary dismissal. In light of this award, Iraola moved to withdraw its motion for voluntary dismissal. Since Iraola had not previously been put on notice that dismissal would be conditioned upon payment of attorneys' fees, the District Court permitted Iraola to withdraw its motion to dismiss and vacated the attorneys' fees award on June 4, 2001. The District Court also denied Iraola's outstanding motions to compel and to extend discovery on its remaining claims for breach of contract and tortious interference with contractual relations. On July 10, 2001, the District Court denied Iraola's request for additional discovery and granted summary judgment against Iraola as to the breach of contract and tortious interference claims.
 
 
 13
 Iraola now appeals the District Court's February 25, 1998 order dismissing Iraola's claims for wrongful termination, promissory estoppel, and quantum meruit; the District Court's July 10, 2001 order granting summary judgment against Iraola on its claims for breach of contract and tortious interference; and the District Court's June 4 and July 10, 2001 orders denying Iraola's motions for additional discovery and for a continuance.
 
 III. Discussion
 
 14
 A. February 25, 1998 Order Dismissing Claims for Wrongful Termination of Contract, Promissory Estoppel, and Quantum Meruit
 
 
 15
 We review the District Court's Rule 12(b)(6) dismissal de novo. A complaint will only be dismissed where it appears beyond doubt that no set of facts could support the plaintiff's claim for relief. Fed.R.Civ.P. 12(b)(6); see Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir.1992). We presume the facts recited in the complaint are true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness, 711 F.2d 989, 994-95 (11th Cir.1983).
 
 
 Wrongful Termination of Contract
 
 
 16
 In its February 25, 1998 Order, the District Court dismissed Iraola's wrongful termination claim, ruling that, under Georgia law governing this diversity case, the K-C-Iraola distribution agreement was one of indefinite duration, terminable at will. The District Court cited Jones v. Destiny Industries, 226 Ga.App. 6, 485 S.E.2d 225 (1997), for the proposition that oral distribution contracts of indefinite duration are terminable at will with reasonable notice. Id. at 8, 485 S.E.2d 225. The Jones plaintiffs sued for breach of an oral contract in which the defendant promised to grant plaintiffs an exclusive dealership of mobile homes. Because in Jones the contracting parties had not specified the duration of the dealership agreement, the Georgia Court of Appeals ruled that the contract was terminable at will. Although the defendant in Jones had promised plaintiffs the dealership for "as long as they remained committed" to the defendant's product line, the court found that the defendant's promise did not "pertain[] to the duration of the exclusive dealership contract." Id. at 7, 485 S.E.2d 225. In light of Jones, the District Court held that in the case at bar the specification of performance conditions — here, sales targets — did not preclude K-C from terminating the at-will contract. Because K-C was entitled to terminate the contract at will, the District Court dismissed Iraola's wrongful termination claim.
 
 
 17
 Three months after the dismissal of Iraola's wrongful termination claim, the same issue of Georgia law was addressed in the Southern District of Georgia in Coffee v. General Motors Acceptance, 5 F.Supp.2d 1365 (S.D.Ga.1998). Coffee held that while contracts of indefinite duration are generally terminable at will, contracts that specify default conditions are not. Id. at 1376. In Coffee, a car dealership sued a lender for wrongful termination of the dealership's line of credit. Because the contract did not contain a termination date, the lender argued that he was entitled to terminate the credit line at will. The court, however, declined to characterize the contract as terminable at will because the written contract expressly enumerated eight "default conditions" under which the lender could terminate the contract. See id. at 1372-73 ("It is understood and agreed that [the lender] may, at its option, terminate the line of credit and refuse to advance funds hereunder upon the occurrence of any of the following [eight conditions].").[4] Although the Georgia Supreme Court had not ruled on the effect of performance conditions, the Coffee court noted that Georgia law requires that contracts be interpreted to give effect to each of its provisions. O.C.G.A. § 13-2-2(4); see Board of Regents v. A.B. & E., Inc., 182 Ga.App. 671, 675, 357 S.E.2d 100 (1987); see also Bank One, Texas, N.A. v. Taylor, 970 F.2d 16, 32 (5th Cir.1992) (a contract's "explicit conditions of default" demonstrate "a clear intention" that the contract would be terminable "only in the event [that one party] failed to meet" his contractual obligations); Reid v. Key Bank of Southern Maine, 821 F.2d 9, 14 (1st Cir.1987) ("It would be illogical to construe an agreement, providing for repayment or default in the event of certain contingencies, as permitting [one party], in the absence of the occurrence of those contingencies, to terminate the agreement without any cause whatsoever."). Therefore, the Coffee court concluded that when a contract of indefinite duration contains enumerated performance conditions, termination is not authorized so long as the party subject to the performance conditions continues to perform as specified.
 
 
 18
 Relying on Coffee, Iraola, citing allegations in its Second Amended Complaint, argues on appeal that the distribution contract contained "performance conditions" that limited K-C's right to terminate the contract:
 
 
 19
 18. K-C represented to Iraola that the Contract would continue in effect for as long as Iraola sufficiently performed its obligations as a distributor by achieving satisfactory sales targets and maintaining its account with K-C current....
 
 
 20
 23. From 1994 to 1996, Iraola increased K-C's sales from zero to approximately U.S. $800,000 annually, establishing a significant market presence and name recognition for the K-C Products in Argentina. In early 1996, K-C publicly acknowledged Iraola as its most successful distributor for Latin America.
 
 
 21
 Second Amended Complaint at ¶¶ 18, 23. Iraola submits that the contract included the "logical[] equivalent" of a provision stating that failure to achieve satisfactory sales level would constitute default. Since Iraola achieved commercial success, Iraola asserts that K-C was not entitled to terminate the contract.
 
 
 22
 We assume arguendo that Coffee is a correct statement of Georgia law. Nonetheless, Iraola's wrongful termination claim could not survive defendants' motions to dismiss. Under Coffee, a contract of indefinite duration is not terminable at will if the contract contains express performance or default conditions. In Coffee, the contract enumerated eight specific events that would trigger the right to terminate the contract. Those conditions were reasonably objective, measurable conditions. Coffee also dealt with a written contract that specifically characterized the "default provisions" as "conditions" to the contract. Those carefully crafted contract terms put dealership and lender alike on notice that failure to meet these conditions meant that the lender could terminate the contract.
 
 
 23
 By contrast, K-C's alleged statement about satisfactory sales targets seems merely to express a general aspiration for a fruitful business venture. It cannot be taken as the equivalent of a written, precisely formulated, and readily understood default condition. The District Court did not err in dismissing Iraola's wrongful termination claim.
 
 
 Promissory Estoppel
 
 
 24
 The District Court dismissed Iraola's promissory estoppel claim because "promissory estoppel has no application where the promise relied upon is for an indefinite duration." Murtagh v. Emory University, 152 F.Supp.2d 1356, 1364 (N.D.Ga.2001). Since the distribution contract was of "indefinite duration," the District Court properly dismissed Iraola's claim for promissory estoppel.
 
 
 Quantum Meruit
 
 
 25
 We also affirm the District Court's dismissal of Iraola's quantum meruit claim. The basis for Iraola's quantum meruit claim is O.C.G.A. § 9-2-7, which states that "when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." See also Watson v. Sierra Contracting, 226 Ga.App. 21, 485 S.E.2d 563 (1997). However, Iraola lacked at least two requirements for a quantum meruit claim.
 
 
 26
 First, Iraola misapprehended the measure of recovery for quantum meruit. In describing its quantum meruit claim, Iraola cited its lost marketing expenditures, as well as other financial losses that it incurred after K-C allegedly refused to repurchase its products.[5] However, those costs incurred in the ordinary course of its distributorship activity for K-C are not compensable under quantum meruit. Quantum meruit claims measure the value of services to the recipient, rather than the costs to the provider, and therefore Iraola's alleged lost profits and costs are not recoverable. See Hollifield v. Monte Vista Biblical Gardens, Inc., 251 Ga.App. 124, 130-31, 553 S.E.2d 662 (2001); Cole v. City of Atlanta, 195 Ga.App. 67, 68-69, 392 S.E.2d 283 (1990) (Because "the expenditures of the provider are not to be considered in computing the value to the recipient," its "evidence of their costs" is irrelevant.); Pembroke Steel Co. v. Technical Sales Associates, 138 Ga.App. 744, 745, 227 S.E.2d 491 (1976) ("Where quantum meruit is involved, the word value means value to the owner, rather than the cost of producing the work to the workmen.").
 
 
 27
 Second, Iraola did not allege that it rendered its services in anticipation of compensation from K-C. The Georgia Court of Appeals has stated:
 
 
 28
 a recovery on a quantum meruit basis may not be obtained where the services (even if beneficial) are rendered with no anticipation that compensation is to be received. The law will not imply a promise to pay for services contrary to the intention of the parties. There can be no recovery for services rendered voluntarily and with no expectation at the time of the rendition that they will be compensated.
 
 
 29
 Broughton v. Johnson, 247 Ga.App. 819, 820-21, 545 S.E.2d 370 (2001); Pembroke Steel, 138 Ga.App. at 745, 227 S.E.2d 491 ("[R]ecovery on quantum meruit may not be obtained where the services are rendered with no anticipation that compensation is to be received.").
 
 
 30
 Based on Iraola's allegations, the District Court properly concluded that Iraola had no expectation of compensation from K-C. Iraola's distribution agreement with K-C was one pursuant to which Iraola purchased medical products from K-C and expected to sell these products to Argentine hospitals, presumably at a profit. Since Iraola anticipated compensation from third parties and not from K-C, Iraola cannot recover under quantum meruit.
 
 
 31
 B. July 10, 2001 Order Granting Summary Judgment Against Iraola for Tortious Interference with Contractual Arrangements and Breach of Contract
 
 
 32
 We review the District Court's July 10, 2001 summary judgment order de novo, appraising all facts and reasonable inferences in the light most favorable to the nonmoving party. Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th Cir.1999). Granting summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 33
 
 Tortious Interference with Contractual Relations
 
 
 
 34
 Iraola argues that K-C and Semones tortiously interfered with its contractual relations with former Iraola employees Alpert and Eduardo Jensen (another Iraola employee who had assisted Alpert with K-C's account) by soliciting them to establish a competitor distributorship. In granting summary judgment on this claim, the District Court found that Alpert voluntarily left Iraola, that Iraola had no contact with Jensen after the latter left Iraola, and that K-C was not a "stranger" to the relationship between Iraola and its employees. We find the "stranger doctrine" dispositive.
 
 
 35
 In Atlanta Market Center Mgmt. Co. v. McLane, 269 Ga. 604, 503 S.E.2d 278 (1998), the Georgia Supreme Court articulated the "stranger" requirement for tortious interference claims:
 
 
 36
 After proving the existence of a contract, it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a "third party," i.e., a "stranger" to the contract with which the defendant allegedly interfered. One is not a stranger to the contract just because one is not a party to the contract, as it has been held that the alleged interferer is not a stranger to the contract and thus not liable for tortious interference where the alleged interferer was the agent for one of the parties to the contract [], and all the purported acts of interference were done within the scope of the interferer's duties as agent. Jet Air v. National Union Fire Ins. Co., 189 Ga.App. 399, 375 S.E.2d 873 (1988).... The intended third-party beneficiary of a contract, legally authorized to enforce the contract, cannot be held liable for tortious interference since he is not a stranger to the contract. Cohen v. William Goldberg & Co., 202 Ga.App. 172, 413 S.E.2d 759 (1991) ...
 
 
 37
 In Jefferson-Pilot Comm. Co. v. Phoenix City Broadcasting, 205 Ga.App. 57, 60, 421 S.E.2d 295 (1992), the shadow of liability for tortious interference was further diminished when the Court of Appeals reasoned that "all parties to a comprehensive interwoven set of contracts which provided for the financing, construction, and transfer of ownership" were not strangers, i.e., the purchaser of a radio station was not a stranger to the contractual relations between the radio station's seller and the seller's lenders. Thus, in order for a defendant to be liable for tortious interference with contractual relations, the defendant must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract. Renden v. Liberty Real Estate, 213 Ga.App. 333, 444 S.E.2d 814 (1994) (where the lessor was "an essential entity" to the subletting of space by its tenant since the tenant's right to sublease was set forth in the lessor's lease)....
 
 
 38
 Id. at 608-10, 503 S.E.2d 278. The Atlanta Market Center Mgmt. Co. ruling, "in effect, reduce[s] the number of entities against which a claim of tortious interference with contract may be maintained." Id. at 610, 503 S.E.2d 278; see also Pruitt Corp. v. Strahley, 270 Ga. 430, 431, 510 S.E.2d 821 (1999) ("Because [defendant] was not a stranger to [plaintiff's contract], [defendant] was entitled to summary judgment.").
 
 
 39
 Iraola has presented no evidence that K-C and Semones were "strangers" to Iraola's employment relationships with Alpert and Jensen. Instead, the record demonstrates that Semones and K-C were intimately entangled with "the contract and the business relationship giving rise to and underpinning" Alpert's and Jensen's relations with Iraola. As "parties to an interwoven contractual arrangement," K-C and Semones do not qualify as "strangers" tortiously interfering with Iraola's contractual relations. In light of Atlanta Market Center Mgmt. Co., Iraola's claim for tortious interference must fail.
 
 
 Breach of Contract
 
 
 40
 Iraola's breach of contract claims rest upon four grounds: 1) K-C's failure to repurchase its overstock (inventory repurchase claim); 2) K-C's failure to pay Iraola for lost commissions from long-term contracts with Argentine hospitals; 3) the exclusivity of the contract; and 4) K-C's termination of the contract "without reasonable notice."
 
 
 Inventory Repurchase
 
 
 41
 Iraola's inventory repurchase claim is based upon the allegation that, after terminating the K-C-Iraola contract, K-C barred Iraola from selling its K-C inventory and then refused to repurchase the stock. Iraola, thus, argues it has a contractual right to the reasonable value of the inventory that it could neither sell to others nor return to K-C.
 
 
 42
 The District Court did not address the inventory repurchase claim in its July 10, 2001 order granting summary judgment in favor of K-C on breach of contract. Following Iraola's motion to alter or amend judgment, however, the District Court held that Iraola had abandoned its inventory repurchase claim because Iraola 1) failed to brief the issue in its memorandum of law in opposition to defendants' motions for summary judgment; 2) failed to list "inventory repurchase" as one of its enumerated claims in its memorandum in opposition to summary judgment; and 3) failed to address the inventory repurchase claim in its initial motion to alter judgment.[6] Iraola counters that it had pleaded the inventory repurchase claim in its amended Rule 56.1 statement of material facts in opposition to the motions for summary judgment.
 
 
 43
 As this court has previously stated, "[f]ailure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal. It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." United States Equal Employment Opportunity Commission v. W & O, Inc., 213 F.3d 600, 620 (11th Cir.2000). Where the proper resolution of the case is beyond any doubt, see Turner v. City of Memphis, 369 U.S. 350, 353, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962), or where "injustice might otherwise result," Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), an appellate court may pass upon an issue that was not raised in the court below. Here, however, Iraola has not presented such a clear or exceptional case. Accordingly, we decline to rule upon a claim that is not properly before this court.
 
 
 Long-Term Commissions
 
 
 44
 Although Iraola properly pleaded the long-term commissions claim in its amended memorandum in opposition to summary judgment at argument, Iraola failed to raise a triable issue of fact that K-C is contractually required to pay Iraola commissions for long-term contracts with Argentine hospitals. Because K-C approved Iraola's long-term contracts with Argentine hospitals to supply K-C medical products, Iraola argues that K-C "tacitly agreed to permit Iraola to continue supplying products" to hospitals for the duration of the hospitals' contracts and "could not terminate Iraola [sic] right to supply Hospital Italiano without cause." Iraola's Reply Brief at 6. Although Iraola has submitted evidence that distribution contacts existed, Iraola has not provided any evidence that K-C was a party to these contracts, that K-C was contractually required to continue supplying Iraola with products for Iraola's hospital clients, or that K-C assumed any obligation to pay Iraola commissions in connection with such contracts. Accordingly, we find Iraola's lack of evidence to be fatal to its long-term commissions claim.
 
 
 Exclusivity of Contract
 
 
 45
 While Iraola alleges that its distribution agreement with K-C was to have been exclusive, Iraola submits no evidence on the basis of which a fact-finder could conclude that both parties actually agreed to an exclusive distributorship. In order to enforce a specific contract provision, a party must demonstrate a "meeting of the minds" as to the key contract provisions. "If there is any essential term upon which agreement is lacking, no meeting of the minds of the parties exists, and a valid and binding contract has not been formed." Auto-Owners Ins. Co. v. Crawford, 240 Ga.App. 748, 750, 525 S.E.2d 118 (1999) (citing BellSouth Advertising & Publishing Corp. v. McCollum, 209 Ga. App. 441, 445, 433 S.E.2d 437 (1993)). Thus, a party cannot recover in a breach of contract action unless there was a "meeting of the minds" upon the essential terms of the agreement.
 
 
 46
 The record evidence does not support a finding that there was "a meeting of the minds" as to exclusivity. Jose Garavilla, one of Iraola's owners, testified that, after he and Semones met to discuss the possibility of forming a distribution agreement between Iraola and K-C, Garavilla left the meeting with the understanding that they had agreed to form an exclusive distributorship. However, in the same deposition, Garavilla also testified that he and Semones agreed only to the possibility of exclusive distribution. Further, Andres Trakinski, Iraola's other owner, testified that "there were no discussions with Semones about exclusivity." July 10, 2001 Order at p. 8. For his part, Semones stated that when Garavilla had raised the idea of exclusive distribution, he (Semones) informed Garavilla that K-C did not grant exclusive distributorships, that K-C had a general policy against exclusivity, and that he (Semones) had no authority to commit K-C to an exclusive agreement.[7] In short, Iraola did not provide sufficient evidence to support the conclusion that even Iraola's co-owners achieved an internal "meeting of the minds," much less that Iraola and K-C arrived at the "meeting of the minds" necessary to form a valid agreement. The self-contradicting[8] testimony of Iraola's principals confirms the correctness of the District Court's conclusion that the record evidence was insufficient to support a finding that the parties reached agreement as to exclusivity.
 
 
 Reasonable Notice of Termination
 
 
 47
 Iraola argues that K-C breached the contract by failing to give Iraola reasonable notice of termination. Iraola asserts that seven weeks' notice was insufficient. The District Court dismissed this claim for two primary reasons. First, Iraola did not plead a claim for unreasonable notice of termination in its Second Amended Complaint. Therefore, the District Court properly decided not to allow Iraola to raise a new claim at the summary judgment stage. Second, Iraola cited no authority for the proposition that seven weeks' notice was unreasonable. Further, none of Iraola's allegations would have provided a jury with sufficient information to judge whether seven weeks would or would not have been reasonable. Instead, Iraola simply reiterated that it was a good distributor and that K-C should not have terminated the contract at all. Therefore, the District Court did not err in granting summary judgment regarding reasonable notice of termination.
 
 
 48
 C. June 4, 2001 and July 10, 2001 Orders on Discovery Motions
 
 
 49
 We review the District Court's denial of Iraola's discovery motions for abuse of discretion. See Burks v. American Cast Iron Pipe Co., 212 F.3d 1333, 1336 (11th Cir.2000); see also Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996), cert. denied, 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997) ("District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential."). Rather than viewing each discovery request in isolation, we begin by considering the scope of discovery previously granted by the District Court. "Where a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied." Avirgan v. Hull, 932 F.2d 1572, 1580 (11th Cir.1991). Here, the record indicates that the District Court did not deny the additional discovery requests until approximately four years after the complaint was filed. Even after the parties had agreed on a discovery schedule, the District Court granted a three-month extension for additional discovery. In short, the District Court had already provided Iraola ample opportunity for discovery. Moreover, we will not overturn discovery rulings "unless it is shown that the District Court's ruling resulted in substantial harm to the appellant's case." Carmical v. Bell Helicopter Textron, Inc., 117 F.3d 490, 493 (11th Cir.1997) (footnote omitted). Since Iraola made no showing that the District Court's ruling harmed its case, Iraola has no grounds to assert that the District Court abused its discretion by denying the discovery motions.
 
 
 50
 For the reasons stated above, we affirm the challenged orders of the District Court.
 
 
 51
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The perceived jurisdictional difficulty arose from the fact that Iraola, a foreign corporation had no American co-plaintiff; had there been such an American co-plaintiff, of citizenship diverse from the American defendants, no difficulty would have been presented by the inclusion of Geo Med, a putatively foreign entity, as a defendant
 
 
 [2]
 See supra text accompanying note 1.
 
 
 [3]
 In so ruling, we assumed "arguendo, without deciding, that the diversity analysis would include an unserved defendant whose foreign citizenship was not known until after discovery had begun."Id.
 
 
 [4]
 The contract's default conditions were as follows: [1] a default by [plaintiff] in the payment or performance of any obligation hereunder or under any other agreement entered into with [defendant]; [2] the institution of a proceeding in bankruptcy, receivership or insolvency by or against [plaintiff] or [its] property; [3] an assignment by [plaintiff] for the benefit of creditors; [4] cancellation of [plaintiff]'s General Motors franchise; [5] the filing of a notice of any tax lien against any of [plaintiff]'s property; [6] a misrepresentation by [plaintiff] for the purpose of obtaining credit or an extension of credit; [7] a refusal by [plaintiff], upon request by [defendant], to furnish financial information to [defendant] at reasonable intervals or to permit [defendant] to examine [plaintiff]'s books and records; or [8] if [plaintiff], without [defendant]'s prior written consent, shall: (a) guarantee, endorse or otherwise become surety for or upon the obligations of others except as may be done in the ordinary course of [plaintiff]'s business; (b) transfer or otherwise dispose of any proprietary, partnership or share interest [plaintiff] has in [its] business, or all or substantially all of the assets thereof; (c) enter into any merger or consolidation, if a corporation; (d) make any substantial or unusual disbursement or use of funds of [plaintiff]'s business, except as may be done in the ordinary course of [plaintiff]'s businessId. at 1373.
 
 
 [5]
 Although K-C has submitted to this court a letter denying that K-C refused to repurchase its goods, Letter from Deft. Counsel to Clerk of Court, Sept. 12, 2002, K-C's factual challenge is not relevant to our analysis of the motion to dismiss this claim. As noted above, we assume all of Iraola's allegations to be true when reviewing the District Court's order dismissing Iraola's wrongful termination, promissory estoppel, and quantum meruit claims
 
 
 [6]
 Iraola did not raise the inventory repurchase claim until it filed itsreply in support of its motion to amend the District Court's July 16, 2001 order. Iraola's reply was filed on September 10, 2001, almost two months after the District Court had granted summary judgment against Iraola on all of its breach of contract claims. As the District Court later stated:
 The Court will not tolerate an effort like this to manipulate the rules of procedure. It will not allow a plaintiff to bury a minor claim in a voluminous complaint, ignore the claim in responding to a motion for summary judgment and then sandbag its opponents and the court by resurrecting the claim after summary judgment is granted.
 Iraola & CIA, S.A. v. Kimberly-Clark Corp., No. 97-CV-1347 (N.D.Ga. filed Sept. 24, 2001).
 
 
 [7]
 Iraola offered no evidence countering Semones' testimony that he lacked authority to grant an exclusive distributorship
 
 
 [8]
 See Prophecy Corp. v. Charles Rossignol, Inc., 256 Ga. 27, 30, 343 S.E.2d 680 (1986) (in reviewing motions for summary judgment, Georgia's rule is that "the testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is `contradictory, vague or equivocal.'").