[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14964
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-21592-CV-JLK

MEDFIRST CORPORATION,
a Delaware corporation,

Plaintiff-Appellant,

versus

COMMUNITY HEALTH PLAN OF THE ROCKIES, INC.,
a Colorado corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 19, 2005)

Before BLACK, HULL and WILSON, Circuit Judges.

PER CURIAM:

MedFirst Corporation appeals the district court's grant of summary judgment, which held Community Health Plan of the Rockies, Inc. (CHPR) was entitled to terminate the parties' merger agreement because MedFirst failed to provide the Colorado Division of Insurance (DOI) with all of the documents it requested to evaluate and approve the merger.  We affirm.

## I.  BACKGROUND

MedFirst sought to acquire CHPR as a wholly owned subsidiary, and the parties entered into a Merger Agreement on May 22, 2002.  At that time, CHPR had fallen below Colorado's minimum statutory requirements for capital and surplus, and failure to meet those minimum requirements put CHPR at risk of being placed into receivership by the state.  The proposed merger required the approval of the DOI, primarily through its review of a "Form A" application, which includes background information on the principals in the transaction, explanation of the terms of the transaction, and explanation of the funding of the transaction.  The DOI appointed Brian Spano, a private attorney who represents the DOI in regulatory matters, as Supervisor of CHPR to assist with the review and evaluation of the proposed merger.

On June 10, 2002, MedFirst filed a Form A application with the DOI, proposing to fund the transaction through a loan from MediqFinancial, a

2

California lender. The Form A application included an exhibit of the "Preliminary Loan Commitment" with contingencies from MediqFinancial. Two weeks later, on June 24, 2002, the Deputy Commissioner of the DOI sent a letter to MedFirst stating it required additional information and documentation, including all loan documentation and agreements between MedFirst and MediqFinancial.

On June 24, 2002, MedFirst filed an amended Form A, providing some of the information requested by the DOI, but not the loan documentation between MedFirst and MediqFinancial. In the amended Form A, MedFirst stated it was negotiating the documentation for the MediqFinancial loan and would send that information to the DOI when completed. Subsequent conversations between Spano and MedFirst indicated MedFirst might pursue alternative financing.

On August 27, 2002, Spano sent a letter to MedFirst confirming the contents of a meeting held between MedFirst, CHPR, and Spano, which Spano said "served to clarify the remaining issues that need to be resolved so that the Division can fully evaluate the Form A and act on MedFirst's request for approval of its proposal to acquire CHPR." In discussing the financing options of MedFirst, Spano wrote:

> We understand that MedFirst originally anticipated that
> MediqFinancial, as the lead financing group, would contribute the
> entire $8.5 million to MedFirst as debt financing. You have now

3

advised the Division that the contribution by MediqFinancial may consist of debt of $3.5 million, and that MedFirst will provide or arrange the additional consideration needed for the transaction through equity investments in MedFirst.

Spano requested full disclosure of the identity of the investors, including biographical information and fingerprint cards. Furthermore, the DOI needed "the loan agreement and all related loan documentation as soon as possible."

The Merger Agreement required the parties to close the transaction no later than August 31, 2002, but the parties failed to close by that date. On September 2, 2002, however, they agreed to an amendment of the agreement requiring a new closing date of September 30, 2002.

The amended Merger Agreement granted CHPR a qualified right of termination if the DOI did not approve the merger by September 30, 2002. Section 12.1(f) of the amended Merger Agreement provided:

> no such termination right shall exist if, as of [September 30, 2002], (i) Purchaser and Seller have provided the DOI with any and all information, documents, or other items or matters requested by DOI; (ii) the DOI has indicated to Purchaser that no outstanding issues or concerns exist in connection with the grant of the Form A Application and the Form A Application is complete in all respects; and (iii) the only unsatisfied condition to closing is approval of the Form A Application by the DOI.

Pursuant to § 12.1(g) of the amended Merger Agreement, both CHPR and MedFirst were granted an absolute right of termination if the merger did not close by November 29, 2002.

Having heard nothing from MedFirst after sending the August 27 letter, Spano sent an e-mail on September 8, 2002 to MedFirst "to check on the status of the information and documentation that remains to be submitted by MedFirst." Spano noted:

> It is particularly important that we receive the loan documentation because we still need to seek agreement on specific language on the matters set forth in my August 27th letter. Moreover, if MedFirst intends to proceed with the equity investors, as you previously mentioned, we need to receive the biographical information and fingerprint cards ASAP in order to conduct the necessary background checks.

MedFirst concedes it did not provide the DOI with the information requested by Spano. In his affidavit, Spano states "MedFirst did not submit the necessary additional documentation for the proposed MediqFinancial loan to the Colorado Division of Insurance" and "MedFirst did not submit the necessary documentation concerning the proposed equity investors in the transaction to the Colorado Division of Insurance."

The parties did not close prior to September 30, 2002. In early October 2002, MedFirst submitted to CHPR a proposed second amendment to the Merger

5

Agreement, extending the closing date to November 1, 2002 and reducing the purchase price. CHPR rejected the proposed second amendment. On November 14, 2002, CHPR sent MedFirst a notice terminating the amended Merger Agreement.

Under diversity jurisdiction, MedFirst brought suit against CHPR alleging breach of contract and breach of implied duty of good faith and fair dealing, seeking specific performance and injunctive relief. CHPR responded that MedFirst failed to satisfy the requirements of § 12.1(f) of the amended Merger Agreement, and therefore it was entitled to terminate the agreement.

The district court granted summary judgment to CHPR, deciding CHPR was entitled to terminate the Merger Agreement at any time after September 30, 2002 because MedFirst failed to produce all of the documents requested by the DOI. The district court decided MedFirst's claims of breach of contract and implied duty of good faith arose after CHPR's right of termination, and therefore it did not need to consider CHPR's actions after that date.

MedFirst appeals, arguing (1) the district court applied an unreasonable and absurd interpretation of the Merger Agreement, resulting in an erroneous grant of summary judgment, (2) undisputed material facts establish MedFirst is entitled to summary judgment on its breach of contract and breach of duty of good faith

6

claims, (3) summary judgment for CHPR was improper because the district court based its decision on credibility determinations, improper inferences, and disputed material facts, and (4) the district court abused its discretion by denying MedFirst extension of time to complete discovery.

## II.  DISCUSSION

We review the district court's grant or denial of summary judgment de novo.  *Peterson v. BMI Refractories*, 132 F.3d 1405, 1411 (11th Cir. 1998).  We review the district court's discovery orders for an abuse of discretion.  *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003).

A.    *The district court did not err in interpreting the Merger Agreement*

In interpreting a contract, "when a document's language is clear, a court cannot indulge in construction or interpretation of its plain meaning."  *Lambert v. Berkley S. Condo. Ass'n, Inc.*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996).  "[W]here a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted."  *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985).

Section 12.1(f) of the amended Merger Agreement provided CHPR a qualified right of termination.  Specifically, § 12.1(f)(i) allowed termination if

7

MedFirst failed to provide the DOI with "any and all information, documents, or other items or matters requested by DOI." The plain language of this provision has no limitation on the kind of information or documents the DOI could request. Similarly, § 12.1(f)(ii) allowed termination if the DOI had "outstanding issues or concerns . . . in connection with the grant of the Form A Application" or if the Form A application was incomplete.

MedFirst concedes it did not provide all documents requested by the DOI. In his affidavit, the DOI's main representative overseeing the merger, Brian Spano, states MedFirst failed to submit the "necessary additional documentation for the proposed MediqFinancial loan" as well as the "necessary documentation concerning the proposed equity investors in the transaction." Thus, both parties and the regulatory agency overseeing the merger agree MedFirst failed to provide "any and all information, documents, or other items or matters requested by DOI." MedFirst therefore did not satisfy § 12.1(f)(i).

Likewise, in both his August 27, 2002 letter and September 8, 2002 e-mail, Spano indicated continuing concerns regarding the financing of the proposed merger and full disclosure of the identity of the investors. Those concerns apparently were never addressed by MedFirst, and therefore MedFirst did not satisfy § 12.1(f)(ii).

8

MedFirst describes the district court's reading of the amended Merger

Agreement as unreasonable and absurd. Specifically, MedFirst contends

§ 12.1(f)(i) allows only "reasonable" requests of information or documents by the

DOI. Such a reading, it says, is bolstered by § 7.2 of the Merger Agreement,

which describes the parties' obligations regarding preparation and prosecution of

the Form A application. Section 7.2 states:

> . . . Following the execution of the Agreement, Purchaser and Seller
> shall proceed as expeditiously as practicable, . . . to file with DOI a
> Form A Application . . . and any other necessary instruments that may
> be required in connection therewith, to obtain the consent and
> approval by DOI of the Merger. Each of Purchaser and Seller agree
> to . . . (ii) provide whatever additional information DOI reasonably
> requests in processing the Form A Application . . .

MedFirst contends only reasonable requests by DOI are owed compliance. In

short, MedFirst argues the DOI's requests for information and documents were

unreasonable, and therefore it did not need to comply.

Even under MedFirst's interpretation of § 12.1(f), CHPR was entitled to

terminate the agreement. The DOI, an agency charged with overseeing the

propriety of the merger, requested documents and information related to financing

of the proposed merger, and we see nothing unreasonable about its requests.

MedFirst's initial financing plan was a "Preliminary Loan Commitment" with

contingencies, and the DOI could reasonably request information regarding such

9

contingent financing. MedFirst then raised the possibility of alternative financing of the merger, and the DOI sought information regarding that possibility. We do not regard the DOI's requests for information unreasonable.

Because MedFirst failed to satisfy either § 12.1(f)(i) or § 12.1(f)(ii), CHPR was entitled to terminate the amended Merger Agreement. The district court's reading of the Merger Agreement was neither unreasonable nor absurd, and it did not err in its interpretation.

B.    *MedFirst is not entitled to summary judgment on its breach of contract and breach of duty of good faith claims*

MedFirst's breach of contract and breach of duty of good faith claims arise from actions taken by CHPR after the September 30, 2002 closing date. MedFirst seeks specific performance of the contract, injunctive relief regarding CHPR's actions, and compensatory damages. Since CHPR was entitled to terminate the Merger Agreement, no remedy is available for MedFirst's claims. The district court did not err.

C.    *Summary judgment for CHPR was not improper*

MedFirst contends the district court based its decision on credibility determinations, an inference drawn against the non-moving party, and disputed material facts. "Credibility determinations, the weighing of the evidence, and the

10

drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986)).

As to credibility, MedFirst argues the district court accepted the credibility of Brian Spano's affidavit over the testimony its own witnesses. MedFirst is incorrect. The district court merely accepted the fact MedFirst did not provide the DOI with all information and documents it requested, a fact conceded by MedFirst and confirmed by Spano. From that conceded fact, a legal determination was drawn. No credibility determination was made.

As to improper inferences, MedFirst claims the district court mischaracterized Spano's affidavit to mean the original MediqFinancial loan commitment was "no longer available." Paragraph 17(c) of Spano's affidavit stated: "Gary Matzner had advised me that the MediqFinancial loan would be reduced to $3.5 million and that MedFirst would raise the additional $5.0 million from equity investors." The district court did not draw an inference from this statement in its opinion, but rather took the plain meaning of it and stated the original MediqFinancial loan was revised, and thus no longer available. At most, the district court merely characterized Spano's affidavit statement and cited it in a

11

footnote in its order. No inference against MedFirst, the non-moving party, was drawn from this characterization, and no inference was necessary for the holding.

As to disputed material facts, MedFirst claims CHPR breached the Merger Agreement prior to September 30, 2002 by artificially increasing the apparent value of CHPR. MedFirst seems to argue it was therefore unable to provide all the documents and information requested by the DOI. But MedFirst failed to provide the DOI with documents and information regarding its own financing plans, and information regarding its own investors. CHPR had no control over that information, and MedFirst provides no showing that CHPR impeded its ability to produce such information. Accordingly, with neither proof nor even an assertion as to how CHPR prevented MedFirst from producing information and documents regarding its own financing plans, no material facts were in dispute.

The district court did not err in granting summary judgment to CHPR.

D. *The district court did not abuse its discretion by denying MedFirst time to extend the completion of discovery*

MedFirst claims the district court abused its discretion by denying a joint motion to extend the deadline of discovery, and claims it was severely prejudiced by such denial. We note, however, "[d]istrict judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential."

12

*Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (quoting *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996)). "Moreover, we will not overturn discovery rulings unless it is shown that the District Court's ruling resulted in substantial harm to the appellant's case." *Id.* (quotation marks and citation omitted).

MedFirst's original complaint was filed in June 2003, and its amended complaint in September 2003. In November 2003, the district court entered its pre-trial order, giving the parties nearly nine months to complete discovery, a time period longer than the parties themselves requested. Neither party filed a deposition until July 2, 2004, only a few weeks prior to the July 28, 2004 deadline. In its July 15, 2004 order denying the motion to extend the deadline for completion of discovery, the district court found the parties had not diligently pursued discovery. We agree.

MedFirst further argues the denial of extension of time for discovery substantially prejudiced its claims by precluding access to testimony from key witnesses. Both witnesses MedFirst wished to depose, however, would have been for purposes of trying to prove breach of contract and breach of duty of good faith. Their testimony would not change the fact MedFirst failed to satisfy the requirements of § 12.1(f).

13

Accordingly, the district court did not abuse its discretion by denying the motion for extension of time to complete discovery.

## III.  CONCLUSION

The district court did not err in its analysis of the Merger Agreement, and properly awarded summary judgment to CHPR.  Nor did the district court abuse its discretion in denying the discovery motion.

**AFFIRMED.**