[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15576
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-00503-JA-KRS

JOSEPH SIUDOCK,

 Plaintiff-Appellant,

versus

VOLUSIA COUNTY SCHOOL BOARD,

 Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 3, 2014)

Before TJOFLAT, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Joseph Siudock, a former teacher with type-I diabetes mellitus and brittle labile diabetes, appeals pro se the district court's grant of summary judgment in favor of the Volusia County School Board ("the Board"), on his claims of: (1)

disability discrimination and failure to accommodate, (2) retaliation, and (3) constructive discharge, brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112, et seq., and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01, et seq., and (4) state law breach of contract.  On appeal, Siudock argues that the district court erred in granting summary judgment on his claims, and in denying his requests to continue discovery after he terminated his counsel.  After careful review, we affirm.

We review the district court's discovery rulings for abuse of discretion. Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1121 (11th Cir. 2004).  We review a district court's order granting summary judgment de novo, viewing the facts in the light most favorable to the non-moving party.  Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1161-62 (11th Cir. 2006). Summary judgment is proper when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The non-movant may not rest upon mere allegations or denials, "but must set forth specific facts showing that there is a genuine issue for trial."  Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990) (quotation omitted).  Speculation or conjecture cannot create a genuine issue of material fact.  Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).

2

First, we are unpersuaded by Siudock's argument that the district court abused its discretion denying Siudock time to conduct additional discovery past the deadlines in the scheduling order and after he terminated his counsel. Our law is clear that a district court does not abuse its discretion when it holds litigants to the clear terms of its scheduling orders. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1307 (11th Cir. 2011). We will not overturn a discovery ruling unless it is shown that the ruling resulted in "substantial harm" to the appellant's case. Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (quotation omitted).

As the record shows, Siudock did not terminate his counsel until after the deadline for discovery had already passed and substantial discovery had been completed. Further, the court had previously granted Siudock's motion to extend discovery to allow additional depositions, but warned that further extensions would be unlikely "absent a showing of extraordinary circumstances." Thus, the court was not obligated to extend discovery because it had already provided ample opportunity for discovery. See id. at 1286-87 (holding that the district court did not abuse its discretion in denying additional discovery when, inter alia, the district court had previously granted a three-month extension). Moreover, Siudock made no showing that the court's ruling harmed his case. See id.

We also find no merit in Siudock's argument that the district court erred in granting summary judgment on his disability discrimination/failure-to-accommodate claims. In order to establish a prima facie case of discrimination under the ADA, a plaintiff may show that he: (1) is disabled; (2) is a qualified individual; and (3) was subjected to unlawful discrimination because of his disability. Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007); see also 42 U.S.C. § 12112(a). A "qualified" individual with a disability can perform the essential functions of the position with or without reasonable accommodations. 29 C.F.R. § 1630.2(m). A certification of total disability on a social security disability application is not inherently inconsistent with being a "qualified individual with a disability" under the ADA. Talavera v. Sch. Bd. of Palm Beach Cnty., 129 F.3d 1214, 1220 (11th Cir. 1997). However, an ADA plaintiff is estopped from denying the truth of any statements made in his disability application. Id. To survive summary judgment, an ADA plaintiff must explain why his claim to the Social Security Administration ("SSA") that he was too disabled for work is consistent with his ADA claim that he could perform the essential functions of the job with reasonable accommodations. Cleveland v. Policy Mgmt. Sys., 526 U.S. 795, 798 (1999).

An employer unlawfully discriminates against a qualified individual with a disability if the employer fails to provide "reasonable accommodations" for the

4

disability, unless providing those accommodations would impose undue hardship on the employer. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). An accommodation is "reasonable" only if it enables the employee to perform the essential functions of the job. Id. The ADA does not require an employer to remove another employee from a position in order to accommodate a disabled employee. Id. at 1256. An employer does not have to provide "the maximum accommodation or every conceivable accommodation possible." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-86 (11th Cir. 1997) (quotation omitted). The employee is only entitled to a reasonable accommodation, not to the accommodation of his choice. Id. at 1286.

Here, the district court properly granted summary judgment in favor of the Board on Siudock's disability discrimination and failure-to-accommodate claims. Among other things, Siudock was not a "qualified individual" under the ADA because he could not perform an essential function of the job with or without accommodations. See 29 C.F.R. § 1630.2(m). The Board presented undisputed evidence that, even if Siudock were accommodated by being allowed to teach only gifted students, he would still be unable to perform an essential function of the job, as even gifted students have disciplinary problems that could have caused Siudock stress and exacerbated his diabetes. Moreover, Siudock is estopped from denying the truth of his statements made in furtherance of his social security disability

5

application -- that returning to teaching "would guarantee [his] death," and that, although his doctors recommended that he teach gifted students, he did not think he could teach any students -- and he has not explained the inconsistency between his statement to the SSA and his ADA claim. See Cleveland, 526 U.S. at 797-98; see also Talavera, 129 F.3d at 1220.

Moreover, because Siudock was not a "qualified individual" with a disability, the Board did not have to provide him accommodations. See Stewart, 117 F.3d at 1285-86 (holding that under the ADA, "a qualified individual with a disability" is entitled to reasonable accommodations). Nevertheless, the undisputed record shows that the Board did provide reasonable accommodations. Principal Deborah Drawdy initially assigned Siudock to a classroom with a private bathroom. Principal Kevin Tucker moved Siudock to a classroom near the media center at Siudock's request. Tucker then moved Siudock back to the classroom with a private bathroom after he complained about the distance to a bathroom from the classroom near the media center. Although Siudock was not permitted to leave his class unattended, he could notify the administration that he needed a staff or faculty member to help supervise students by: (1) using a call button; (2) sending a student to an administration office that was less than ten steps away from his classroom; and (3) knocking on the window between his classroom and an administrator's office. The Board also altered Siudock's schedule so that he was

6

required to teach no more than two classes in a row, permitting him regular intervals to check his blood sugar.  The Board thus provided reasonable accommodations for Siudock to use the bathroom and check his blood sugar, and was not required to provide Siudock the accommodation of his choice, or "the maximum accommodation or every conceivable accommodation possible."  See id.

We also disagree with Siudock's argument that the district court improperly granted summary judgment on his retaliation claim.  The ADA's general anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."  42 U.S.C. § 12203(a); Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007).  To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) the adverse action was causally related to the protected expression.  Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004).  After a plaintiff has made out a prima facie case of retaliation, the burden shifts to the employer to articulate legitimate nondiscriminatory reasons for its actions.  Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999).  The plaintiff must then show that the employer's proffered reasons are pretextual.  Id.

In his complaint, Siudock alleged that the Board retaliated against him by: (1) assigning him a more rigorous teaching schedule; (2) removing him from

leadership positions; (3) failing to accommodate his requests to allow for glucose testing, administering medication, and eating; (4) placing him in a more stressful classroom environment; and (5) harassing him. However, the undisputed evidence shows that Board did accommodate his requests to allow for glucose testing, administering medication, and eating, and that Siudock was not harassed.

Plus, even assuming that Siudock established a prima facie case of retaliation for the other claims, the Board presented legitimate nondiscriminatory reasons for its actions. Principal Karen Beattie replaced Siudock's tentative assignment to teach 6th grade with 8th grade general education American history classes because: (1) Susan Jackson was to become the assistant principal for 6th grade, and Beattie knew Siudock was unhappy with Jackson as his administrator; (2) Beattie filled the 6th grade positions with teachers who were only certified in elementary education because Siudock was certified to teach higher grade levels; (3) by assigning Siudock only general education American history classes, he had only one class preparation, and he had previously complained about having too many preparations; (4) Siudock had struggled in teaching gifted classes and had been placed on a success plan; and (5) many parents and students had complained about Siudock's classroom behavior and requested transfers to other classes. Beattie also testified that she did not reassign Siudock to club sponsorships because others had complained about working with him. Siudock presents no

evidence, other than his own unsupported belief, that these reasons were pretextual. Thus, the district court properly granted summary judgment on his retaliation claims. See Cordoba, 419 F.3d at 1181; Eberhardt, 901 F.2d at 1580.

We find no merit in his constructive discharge claim either. A constructive discharge claim is not a jury question unless a plaintiff presents substantial evidence that employment conditions were intolerable. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002). An employee must show that his working conditions were so difficult that a reasonable person would have felt compelled to resign. Id. at 1161 n.30. In assessing constructive discharge claims, we do not consider a plaintiff's subjective feelings about his employer's actions, but whether a reasonable person in the plaintiff's position would be compelled to resign. Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1450 (11th Cir. 1998).

In this case, Siudock has pointed to no evidence showing that working conditions were so intolerable that a reasonable person in his position would have felt compelled to resign. To the extent Siudock alleges that Principal Beattie harassed him by checking his classroom for syringes, the record shows that Siudock on at least two occasions left his medication, including his syringes, out where students had access. As a result, Beattie's "syringe checks" were not harassment, but rather an effort to ensure that Siudock did not endanger the students. The undisputed record also shows that Siudock voluntarily resigned due

9

to his deteriorating health.    Accordingly, the district court properly granted summary judgment in favor of the Board on Siudock's constructive discharge claim.

Finally, we reject Siudock's argument concerning his breach of contract claim. In Florida, a breach of contract claim requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach; and (3) damages resulting from the breach.    Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009).

Here, the undisputed record shows that the Board did not materially breach the 2006 settlement agreement it reached with Siudock after he filed his first charge of discrimination with the Equal Employment Opportunity Commission. Paragraph 4 of the agreement provided that the Board "agrees that there shall be no discrimination or retaliation of any kind against any person because of opposition to any practice deemed illegal under the ADA as a result of filing this charge."  As we've explained above, the Board did not discriminate or retaliate against Siudock. The parties also agreed in paragraph 7D to meet during the pre-planning session before the 2007-2008 school year to agree on a reasonable accommodation to place Siudock's classroom near a facility to accommodate his need for privacy to check his blood sugar as necessary.  The evidence demonstrates that, at the time of his transfer to Creekside Middle School, Siudock met with the area superintendent, a

10

Volusia Teachers Organization representative, and the Board's attorney to discuss placement in a classroom with a bathroom. In addition, Siudock testified that he met with Principal Tucker in July 2007 to discuss moving out of his classroom equipped with a bathroom into a classroom near the media center. Thus, the Board did not materially breach paragraph 7D. Finally, in paragraph 7F, the parties agreed that, if Siudock needed assistance, he would contact his principal via email, and, if the principal failed to respond within three business days, Siudock would send a follow-up email. The language of this paragraph describes how Siudock must present his complaints, but does not obligate the Board to take any action. Accordingly, the Board did not breach the settlement agreement, and the district court properly granted summary judgment in its favor.

**AFFIRMED.**