[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11850
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00304-SLB


VALARIE KAY KILGORE,

                                                        Plaintiff-Appellant,

versus

TRUSSVILLE DEVELOPMENT, LLC,
d.b.a. Hilton Garden Inc.,

                                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 24, 2016)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Valarie Kay "Katie" Kilgore, a Caucasian female in her sixties, appeals *pro se* following entry of summary judgment in favor of her former employer, Trussville Development, LLC, d/b/a Hilton Garden Inn ("Hilton"), in her employment-discrimination suit alleging that she was terminated because of her age and her race.  On appeal, Kilgore argues that summary judgment was inappropriate and that the court abused its discretion on a discovery matter.  After careful review, we find that triable issues of fact preclude entry of summary judgment and therefore vacate in part and remand for further proceedings.  We affirm as to the district court's denial of Kilgore's discovery motions.

## I. Factual Background

Kilgore began working as a front-desk agent for Hilton in Trussville, Alabama, in December 2011.[1]  She previously had been working for another hotel in Liberty Park.  At all relevant times, Quincey Beckwith, an African-American female, was the front-desk manager and Kilgore's supervisor.  In February 2012, Joe Malik, a Caucasian male, became general manager of the hotel.

In late February 2012, Beckwith asked Kilgore to train two new, part-time front-desk agents.  Both new hires were young, African-American females with no

---

[1] In reviewing whether summary judgment was appropriate, we present the facts in the light most favorable to the non-moving party, Kilgore, and construe all reasonable inferences in her favor. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).  We note that many of these facts are taken from a personal affidavit filed by Kilgore in opposition to Hilton's motion to summary judgment—an affidavit Hilton claims is a "sham" that should be disregarded.  As we explain in more detail below, we find that the affidavit may not be disregarded for purposes of summary judgment.

front-desk experience.   Kilgore was told that the new hires were to work at a Hampton Inn, a sister property, but they remained at Hilton even after Kilgore was terminated.  Kilgore had her hours reduced because of the new hires.

In February and April 2012, Malik made comments concerning Kilgore's race and age.  In late February 2012, Kilgore asked Malik to tell LaCretta "Cretta" Shipley, the Housekeeping Manager and Beckwith's sister, to "stop making frequent, derogatory comments" about Kilgore's age, lack of memory, and hearing. In response, Malik laughed and told her, "You are old, Katie.  Where's your sense of humor?  Or can't you remember what that is?  You did hear me right?"  Malik then directed Kilgore to return to work.

Within a week or so, Shipley yelled at Kilgore because she allowed a guest to go to his room without being told by Shipley that the room was ready.  Shipley informed Malik, who also yelled at Kilgore regarding the incident.   Kilgore suggested that Malik discuss the incident with the maintenance man, who had told her the room was ready.  Malik told her he did not care about her suggestions.  He then stated, "You're a stubborn, old woman, who either won't listen or can't hear what you're being told to do.  This business between you and Cretta better stop, and stop now; you'll never win these battles; you're the wrong color, lady."

In April 2012, Beckwith informed Kilgore that Debra Quick, a Caucasian female front-desk agent over the age of forty, had been fired by Malik.  Quick,

who had years of front-desk experience, was the only other Caucasian front-desk agent during Kilgore's employment. Quick allegedly was terminated for failure to perform her duties satisfactorily, but Kilgore believed that Quick was great with guests and co-workers.

On April 18, 2012, Kilgore fell and was injured on a wet floor while looking for a guest's item in the lost and found. Kilgore left work shortly thereafter. After Kilgore's departure, another employee wrote a report stating that she had witnessed an altercation between Kilgore and a male guest who had asked Kilgore to look for his son's missing red tie. According to the employee, Kilgore "brushed the man off" and said that she was too busy and had already looked for the item. When the employee intervened to help the guest, the guest whispered to her that Kilgore did not "have to be so nasty." At work the next day, Kilgore was called to Malik's office and received her first verbal warning, as reflected on a "Discipline Documentation Form," which she signed. According to Beckwith, Kilgore was told by Malik at that meeting that she would be terminated for another bad report.

A week later Shipley reported Kilgore for being hostile, disrespectful, and noncompliant. Kilgore refused to sign the write-up and insisted that Malik view the surveillance tape. After reviewing the tape, Malik stated, "I'll let it go this time." Later that day, when Kilgore confronted Malik in his office, he told her,

4

"Like I've said before, Katie, you're never going to win these battles; you're the wrong color, and frankly, you're too old to fight the fight."

On April 30, 2012, Malik and Beckwith reprimanded Kilgore for failing to follow Beckwith's instructions the day before regarding a guest's billing request. Kilgore believed Beckwith's instructions were inconsistent with corporate policy. When Kilgore noticed that the managers were prepared to give her another Discipline Form, she objected and stated that she would take this up with the corporate office if she had to. She then left the room. A day or two later, Malik walked by and whispered, "The old lady wins one; but it ain't over yet."

A couple of weeks later, Beckwith mentioned to Kilgore that a guest had lodged a corporate complaint against Beckwith regarding the billing incident. Beckwith stated that Malik did not put it in her file, just like he had not put a previous corporate complaint in her file. As Beckwith left the room, Kilgore heard her say, "You old white Bi . . . , " but Kilgore did not hear the end of the sentence.

On June 5, 2012, Hilton received a negative survey from a guest who had stayed at the hotel from May 25-28. In the survey, the guest indicated that she was extremely dissatisfied with the hotel's value for price paid, bed comfort, and housekeeping services. She also stated that "[t]he front desk staff on [her] second day was extremely rude and short tempered." According to Beckwith, Malik or Beckwith, or both, called the customer to apologize for the poor service and to

5

request information about the identity of Hilton staff involved. "Based on the information provided," Beckwith stated, "we felt certain that the Plaintiff was the employee responsible for offending the guest in question." Doc. 11-2 at 2.

On June 6, 2012, Malik and Beckwith met with Kilgore and terminated her employment. Kilgore objected and requested to view the surveillance tape and to be told what information the guest provided that identified Kilgore as the culpable front-desk agent. Beckwith and Malik refused to discuss the details of the alleged guest complaint, and Kilgore never was given an opportunity to view the surveillance tape. Malik issued another Discipline Documentation Form, on which he wrote that a "guest stated on a survey that Katie was extremely rude and short tempered," and that in a phone conversation, the "guest couldn't believe how rude she was." The Form indicates that the date of the incident was May 28, 2012. Kilgore submitted records indicating that she was not working on May 28. According to Beckwith, Kilgore was terminated because of her "continually poor attitude" towards Hilton's guests.

## II. Procedural Background

Following her termination, Kilgore filed a charge of discrimination with the Equal Employment Opportunity Commission, and later, upon receiving her right-to-sue letter, filed suit in the United States District Court for the Northern District of Alabama in April 2013. Kilgore alleged that she had been terminated based on

6

her race, in violation of Title VII, 42 U.S.C. § 2000e-2, and her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. The district court entered a scheduling order setting deadlines for discovery (June 30, 2014) and dispositive motions (July 31, 2014).

Well before the close of discovery, on February 26, 2014, Hilton moved for summary judgment. Hilton argued that Kilgore could not establish a *prima facie* case of either race or age discrimination because she did not show that she was treated less favorably than any similarly situated employee outside of her protected class, and she had no evidence to show that Hilton's legitimate, non-discriminatory reason for terminating her—Kilgore's rude and discourteous behavior toward guests—was actually a pretext for discrimination. In support of its motion, Hilton filed two exhibits: (1) Kilgore's responses to Hilton's interrogatories; and (2) Beckwith's affidavit. On appeal, Hilton characterizes its motion as a "no evidence" motion for summary judgment. Without addressing the discovery deadline set in the scheduling order, the district court directed Kilgore to respond in opposition to Hilton's motion for summary judgment, including filing any evidentiary materials in support, by March 19, 2014.

On the same day Hilton filed its motion for summary judgment, Kilgore filed a motion to compel "meaningful responses" to certain discovery she requested. Hilton filed a response in opposition to Kilgore's motion to compel,

7

and, on September 11, 2014, the district court entered an order granting in part and denying in part Kilgore's motion to compel. The court went through each request and response. The court then directed Kilgore to respond to Hilton's summary-judgment motion by October 31, 2014. Kilgore filed a motion to reconsider, asking the court to revisit certain rulings on her motion to compel, and she also requested an extension of time to complete discovery. The court denied both requests.

On October 31, 2014, Kilgore filed her response in opposition to summary judgment. She disputed, in regard to the negative guest survey, that she was personally identified by the guest, and she noted that Hilton did not explain what information it received from the guest that purportedly identified Kilgore. Kilgore submitted with her response a personal affidavit, which she relied on as the primary evidence of discrimination. Many of the specific factual allegations presented above in the factual background, particularly concerning discriminatory comments by Malik and Beckwith, come from this affidavit. Kilgore also submitted Hilton attendance records, asserting that she did not work the date of the incident reflected on the discipline form, May 28, 2012.

In November 2014, Hilton moved to strike Kilgore's affidavit as a "sham," asserting that it was inconsistent with her unambiguous, sworn interrogatory responses. In a separate filing, Hilton contended that it was entitled to summary

8

judgment even if the district court considered the affidavit. Kilgore responded that Hilton had mischaracterized her interrogatory responses, that she may have misunderstood some of the interrogatories, and that "[s]he was waiting to be deposed to testify under oath as to her personal knowledge." She also noted that Hilton chose not to take her deposition and did not submit more specific interrogatories for further elaboration or clarification.

On March 30, 2015, the district court granted summary judgment in favor of Hilton. The court found that Kilgore had not established a *prima facie* case of either race or age discrimination because she had not identified a similarly situated employee outside of her protected class who was treated more favorably. And even if she had established a *prima facie* case, the court stated, she had not shown that Hilton's legitimate, nondiscriminatory reason for her termination—guest complaints about her demeanor—was a pretext for discrimination. While Kilgore disputed whether the guest complaints were legitimate, the court explained, she did not assert that she was not the front-desk agent about whom the guest complained. Because the district court concluded that Kilgore failed to create a genuine issue of material fact even with her affidavit, the court denied as moot Hilton's motion to strike the affidavit as a sham. Kilgore timely appealed.

On appeal, Kilgore argues that summary judgment was improperly granted and that the district court abused its discretion in denying in part her motion to

compel discovery.  Hilton responds that this Court should ignore Kilgore's alleged sham affidavit, that it is entitled to summary judgment regardless of whether the affidavit is considered, and that the district court did not abuse its discretion in its discovery rulings.

### III. Discussion

We review a district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party.  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).  Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  The district court generally must consider all record evidence when reviewing a motion for summary judgment.  *Strickland*, 692 F.3d at 1154.

At the summary-judgment stage, the judge's function is not to weigh the evidence but to determine if there is a "genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*  Therefore, summary judgment

10

may be granted "[i]f the evidence is merely colorable or is not significantly probative." *Id.* at 249-50, 106 S. Ct. at 2511 (citations omitted).

## A. The "Sham Affidavit" Doctrine

Because Kilgore's claims of discrimination largely hinge on the content in her personal affidavit, we first address Hilton's contention that this affidavit should be disregarded as a "sham." Hilton claims that Kilgore, a *pro se* party, "made a very calculated gamble" to omit material and relevant information in response to interrogatories "with the apparent hopes of 'springing' that information in some sort of shocking fashion in a later deposition," and when no deposition occurred, she waited to bring that information in a surprise affidavit.

"A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010); *see Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) ("[W]e may *only* disregard an affidavit that "contradicts, without explanation, previously given *clear* testimony.") (emphasis in original). The doctrine is to be applied sparingly given the harsh effect it may have on a party's case. *Latimer*, 601 F.3d at 1237. To apply the doctrine, courts must find an "inherent inconsistency" between the affidavit and the prior sworn testimony. *Id.*

11

We do not believe that Kilgore's affidavit is a "sham" that may be disregarded. Initially, we note that Hilton has cited no decision from this Court applying the doctrine in the specific circumstances here—an alleged inconsistency between a later affidavit and earlier, apparently unsworn, interrogatory responses. Rather, our Court appears to have discussed application of the doctrine only when an affidavit or declaration allegedly contradicted sworn deposition testimony. *See, e.g.*, *Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1316-17 (11th Cir. 2007); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987); *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986); *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 656-57 (11th Cir. 1984).

We need not consider here whether the doctrine applies generally in this context because even if it does, we do not find any unexplained, inherent inconsistency between Kilgore's interrogatory responses and her affidavit. Hilton relies on Kilgore's responses to two interrogatories, only one of which we present in full below.[2]

Interrogatory No. 13:

---

[2] The other interrogatory on which Hilton relies, No. 8, asked Kilgore to identify "each and every individual from whom you have received any information concerning the allegations" in Kilgore's complaint. In response, Kilgore did not identify individuals, instead non-responsively stating that she "received no factual information from any individual" regarding the allegations in her complaint. But it is clear and undisputed that Malik and Beckwith were the focus of Kilgore's allegations, and they were identified by Kilgore in a later interrogatory response. There is nothing in Kilgore's response that could establish that Malik and Beckwith were not individuals with information about the substance of her claims.

12

Please describe the sum and substance of any communication you had with any employee or former employee of HGI which leads you to believe that you were terminated in a discriminatory manner as alleged in your Complaint. In so doing, identify the employee or former employee making each and every such statement, substance of each statement and identify the dates and times upon which said statements were made.

Response to Interrogatory No. 13:
Plaintiff received no factual information from any individual, relating to Plaintiff's Amendment Complaint.

What stands out from Kilgore's *pro se* response is not that it is inherently inconsistent with her later affidavit, but that it is simply non-responsive to the interrogatory. She stated only that she "received no factual information from any individual" relating to her complaint. What she meant by this is not clear, though it appears that she may have misunderstood the interrogatory as asking her to disclose any information that an employee *had given her* indicating that she had been fired for discriminatory reasons. Nor did Kilgore's response to the interrogatory state that no employee or former employee had made a statement that led her to believe that she was terminated in a discriminatory manner.[3] Because we find no *clear*, sworn testimony that is inherently inconsistent with her affidavit, *see Lane*, 782 F.2d at 1532, we do not agree with Hilton that Kilgore's affidavit

---

[3] Even before Hilton filed its motion for summary judgment, it should have been obvious to Hilton that Kilgore apparently misunderstood the question. Kilgore's amended complaint set forth specific factual allegations regarding Hilton employees' actions that Kilgore found discriminatory. Under these circumstances and particularly in view of Kilgore's *pro se* status, Hilton could have sought to compel better answers from Kilgore or could have taken her deposition.

13

should be disregarded as a sham.  *See Latimer*, 601 F.3d at 1237.  The affidavit was therefore properly considered along with other record evidence, and the credibility of its contents is a matter for the jury.  *See Tippens*, 805 F.2d at 953-54.

## B. Disparate-Treatment Claims

Title VII forbids employment discrimination against any person based on that individual's race.  42 U.S.C. § 2000-2(a).  The ADEA forbids employment discrimination against an employee, who is at least 40 years of age, on the basis of that employee's age.  29 U.S.C. §§ 623(a)(1), 631(a).

Under either statute, the plaintiff bears the burden of proving that the employer discriminated against her unlawfully, and she may establish her claim using either direct evidence of discrimination or circumstantial evidence that creates an inference of discrimination.[4]  *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (ADEA); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330-31 (11th Cir. 1998) (Title VII).  When a claim is based on circumstantial evidence, we generally apply the familiar burden-shifting

---

[4] We agree with the district court that Malik's and Beckwith's comments about Kilgore's age and her race do not constitute direct evidence of discrimination.  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Id.*  Here, the discriminatory remarks were not made in the context of Kilgore's termination, so they were not direct evidence of discrimination. *Id.*  Nonetheless, we consider them in evaluating Kilgore's circumstantial evidence of discrimination. *See id.* at 1331.

14

framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  *Id.*

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  *Kragor*, 702 F.3d at 1308; *Standard*, 161 F.3d at 1331.  If the plaintiff establishes such a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action.  *Id.*  Once the employer proffers a non-discriminatory reason for the employment action, "the inference of discrimination drops out of the case entirely," and the plaintiff then has the opportunity to show that the employer's proffered reasons were a pretext for discrimination.  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

The plaintiff's burden at the pretext stage "merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against her."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).  "A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination."  *Wilson v. B/E Aerospace, Inc.*, 376

F.3d 1079, 1088 (11th Cir. 2004); *see Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

The *McDonnell-Douglas* framework, however, is not the exclusive means of creating a triable issue of fact in an employment-discrimination case. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."). A plaintiff can also create a triable issue of fact concerning an employer's discriminatory intent by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733-34 (7th Cir. 2011) (footnote omitted)).

1.     Prima Facie *Case*

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981). The plaintiff must prove by a preponderance of the evidence that the challenged employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *Id.* "The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." *Wilson*, 376 F.3d at 1087. In cases of termination, the

16

plaintiff generally must show that she is a member of a protected class and either was replaced by someone outside the protected class, *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995), or was treated worse than similarly situated employees outside of her protected class, *Wilson*, 376 F.3d at 1091.

Here, we conclude that Kilgore presented sufficient evidence to establish a *prima facie* case of both age and race discrimination, creating an inference of unlawful discrimination. Kilgore's affidavit states that two young, African-Americans employees were hired as front-desk agents shortly after Malik took over as general manager in February 2012. Kilgore had her hours reduced because of the new hires, and, while Kilgore was told that the new hires were being trained for a sister hotel, they remained at Hilton even after Kilgore was terminated. Thus, Kilgore presented some evidence to suggest that she was replaced as a front-desk agent by persons outside her protected classes.

In addition, from February 2012 until her termination in June 2012, Malik made several references to Kilgore as being "old" ("a stubborn, old woman," "too old," an "old lady,") and the "wrong color." Such comments are circumstantial evidence of discriminatory intent, particularly where many of these comments occurred in the context of discussing work-related or disciplinary matters. *See, e.g.*, *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998) (racial

17

comments "may provide circumstantial evidence to support an inference of discrimination"); *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204-05 (11th Cir. 2010) (comments by a supervisor that a plaintiff is "too old" can be circumstantial evidence of age discrimination); *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991) (ambiguous comment by a supervisor that the plaintiff was "too old" "certainly supports a showing of discriminatory intent if we interpret the remark in the light most favorable to Alphin").

For example, Malik once told her that she was the "wrong color" and "too old" to win battles with her co-workers, which, in the light most favorable to Kilgore, suggests that she was being treated differently with respect to disciplinary matters and the conditions of her employment than employees who were younger and a different color than Kilgore. Furthermore, Malik on another occasion told Kilgore, with respect to Kilgore's failure to follow Beckwith's instructions, "The old lady wins one; but it ain't over yet," linking an age-based comment with an implicit threat of future action against Kilgore.

Viewing the evidence as a whole, and keeping in mind that the *prima facie* case is "not onerous," we find that Kilgore has presented sufficient evidence that she was terminated "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1094.

2.    *Legitimate, Non-Discriminatory Reason*

18

As a legitimate, non-discriminatory reason for her termination, Hilton cited Kilgore's rude and discourteous behavior towards hotel guests on at least two occasions. We do not believe Kilgore disputes that being rude or discourteous towards guests "might motivate a reasonable employer" engaged primarily in customer service to discharge an employee, even if she does dispute whether she was in fact rude or discourteous toward guests. *See, e.g.*, *Chapman v. AI Transp.*, 229 F.3d 1012, 1030-31 (11th Cir. 2000) (*en banc*). Accordingly, Kilgore then had the opportunity to demonstrate that Hilton's reason was a pretext for unlawful discrimination. *Id.* at 1024-25.

*3.     Pretext*

A legitimate, non-discriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason is false and that the real reason is impermissible discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16, 113 S. Ct. 2742, 2752 (1993). To show pretext, a plaintiff generally must present sufficient evidence for a reasonable factfinder to find the employer's proffered legitimate reasons for its action are unworthy of credence. *Alvarez*, 610 F.3d at 1265.

We do not sit as a super-personnel department judging the wisdom or accuracy of the employer's decision. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Rather, "our inquiry is limited to whether the

employer gave an honest explanation of its behavior."   *Id.* (internal quotation marks omitted); *see Alvarez*, 610 F.3d at 1266 ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and . . . not on reality as it exists outside of the decision maker's head.").   Therefore, in attempting to show pretext, a plaintiff must meet the employer's reason head on and rebut it; she cannot simply recast the employer's reason, substitute her business judgment for that of the employer, or otherwise quarrel with the wisdom of the decision.  *Alvarez*, 610 F.3d at 1265.

Here, to the extent Kilgore simply argues that she was not in fact rude to guests, her contentions are insufficient to establish pretext.  An employer does not unlawfully discriminate against an employee "if the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief." *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987).  Even assuming that Kilgore was not in fact rude to guests, such evidence would not alone show that Malik and Beckwith did not honestly believe she had been rude to guests based on a report filed by Kilgore's co-worker and on a negative guest review.  *See Alvarez*, 610 F.3d at 1266.

Nevertheless, liberally construing her *pro se* appellate brief and her response in opposition to summary judgment, Kilgore argues that Malik and Beckwith did not honestly believe that Kilgore was the front-desk staff member identified in the

negative guest survey.[5]   And viewing the evidence in the light most favorable to Kilgore and construing all reasonable inferences in her favor, we conclude that Kilgore has created triable issues of fact on whether she was terminated because of her race and her age.

The record evidence, in the light most favorable to Kilgore, shows that Malik and Beckwith decided to fire Kilgore based on a guest survey that did not name her.   Beckwith's testimony that the guest later identified Kilgore as the offending front-desk agent alone does not defeat Kilgore's claims because the jury is not required to believe Beckwith's testimony on that point, particularly when it refers only vaguely to "information provided" by the guest.   *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 2110 (2000) ("[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe . . . [and] give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, *at least to the extent that that evidence comes from disinterested witnesses*.") (citations and internal quotation marks omitted) (emphasis added).   Beckwith is not a disinterested witness.

---

[5] In this respect, we disagree with the district court's finding that Kilgore did not assert that she was not the front-desk agent about whom the guest complained.   In her response in opposition to summary judgment, Kilgore asserted that she was not working on May 28, 2012, the date of the incident reflected on the Discipline Form, and she submitted Hilton attendance records supporting that assertion.

Moreover, whether Hilton gave an "honest explanation of its behavior" is called into doubt by Kilgore's evidence that Malik and Beckwith refused to disclose the information they received from the guest allegedly identifying Kilgore as the offending front-desk agent, that they denied Kilgore's request to view a surveillance tape of the day in question (when Malik previously had exonerated Kilgore after viewing a surveillance tape), and that Kilgore was not working on the day of the incident cited in the guest survey.[6]

Furthermore, Kilgore presented evidence suggesting that the reason she was fired was because of unlawful discrimination. As recounted above, both Malik and Beckwith made comments to Kilgore about her age and her race, and these comments were relatively close in time to her termination by Malik and Beckwith. *See Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) ("Language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case."). Moreover, Malik had recently fired the only other white, front-desk agent, while earlier hiring two younger, African-American front-desk agents.

---

[6] We note that the guest complaint cites the "second day" of the guest's stay as the date of the incident, which would have been earlier than May 28. Nevertheless, the Discipline Form reflects that the date of the incident was May 28, and the Form appears to have been prepared after Malik or Beckwith spoke with the guest, which could indicate that the guest clarified when the incident occurred. At the least, though, this creates a factual issue as to the date of the incident and whether Kilgore was working on that date.

22

Overall, Kilgore's circumstantial evidence, construed in the light most favorable to Kilgore, supports an inference that the guest survey was used as a pretext to fire Kilgore because she was "too old" and the "wrong color." Accordingly, we vacate the district court's order granting summary judgment to Hilton and remand for further proceedings on Kilgore's claims.

## IV.

We review the denial of a motion to compel discovery and the denial of a motion for reconsideration for an abuse of discretion. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006) (denial of motion to compel discovery); *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001) (denial of motion for reconsideration). District courts are accorded wide discretion in discovery matters and we will defer to the district court unless it has made a clear error of judgment. *Holloman*, 443 F.3d at 837; *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003). We will not overturn a discovery ruling unless the appellant shows that the district court's ruling resulted in substantial harm to her case. *Iraola & CIA, S.A.*, 325 F.3d at 1286.

Here, the district court did not abuse its discretion when it denied in part Kilgore's motion to compel discovery and denied her subsequent motion for reconsideration. The district court, which was in the best position to determine the matter, reviewed each of Kilgore's discovery requests identified in the motion to

compel and Hilton's responses to those requests, and then issued an individual ruling pertaining to each. Many of Kilgore's requests were overly broad, asked for information not material to the substantive issues before us, or concerned specifics of events already within Kilgore's personal knowledge. Kilgore has not shown that the district court's denial of her motion to compel harmed her case. *See id.*

## V.

For the foregoing reasons, we vacate the district court's order granting summary judgment to Hilton on Kilgore's claims of age and race discrimination, and we remand for further proceedings on those claims. We affirm the district court's orders respecting Kilgore's motion to compel.

**VACATED AND REMANDED IN PART; AFFIRMED IN PART.**